UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADDISON SANDOVAL, LIONEL DUCOTE, NICHOLAS KING, and RICHARD NEAL, on behalf of themselves and other individuals similarly situated,<br><br>        Plaintiffs,<br><br>        -against-<br><br>UPHOLD HQ INC.,<br><br>        Defendant. | Case No. 1:21-cv-07579 (VSB)(BCM) |

## [PROPOSED] ORDER ESTABLISHING PROTOCOL FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION

This matter has been brought before the Court by the parties in the above-captioned litigation. The parties through counsel have agreed to the form and entry of this Order ("ESI Order") establishing a protocol for the production of Electronically Stored Information ("ESI") in this matter.

**I.    SCOPE**

A.    The procedures and protocols outlined herein govern the search for, review production of ESI (as defined below) by a party during the pendency of this litigation.

B.    As used in this order, the terms "ESI" or "Electronically Stored Information" means discoverable documents and data existing in electronic form including e-mail, word processing documents, spreadsheets, electronic slide presentations, databases, and other reasonably accessible electronically stored information relevant to the claims or defenses of any party subject to discovery pursuant to Fed. R. Civ. P. 26.

**II.     IDENTIFICATION OF RESPONSIVE ESI.**

A.     Documents and ESI which are neither privileged nor otherwise protected shall be timely reviewed and produced in accordance with this ESI Order.  After receiving requests for production of documents, the party making the production (the "Producing Party") shall conduct a reasonable and good faith search for responsive ESI.

B.     Absent a further order of the Court, a Producing Party shall not have an obligation to search or produce from sources of ESI that it in good faith identifies as not reasonably accessible because of undue burden or cost in accordance with Fed. R. Civ. P. 26(b)(2)(B).

C.     **Search Terms.**  The parties shall meet and confer and reach agreement as to the method of searching, and the words, terms, and phrases (if any) to be used to locate and identify potentially responsive ESI, and/or any combination of culling methodologies.  The parties shall also agree on the timing and conditions of any additional searches that may become necessary in the normal course of discovery.  Nothing in this Protocol shall preclude a producing party from performing a responsiveness or privilege review to determine if documents captured by any search terms are in fact responsive to the requesting party's request and/or otherwise discoverable.

D.     **Custodians and Electronic Systems.**  The parties shall meet and confer to identify the custodians whose email and other ESI will be searched, not to exceed 10 for any party, and any other electronic systems that will be searched, using the agreed search terms from Section II.C.  The parties shall also discuss prioritizing or tiering custodians, with the first priority custodians searched and reviewed first, and any further custodians searched only if the party requesting the discovery ("Requesting Party") identifies why searches of additional custodians are necessary and would not be largely duplicative.

E.     **Technology Assisted Review in Lieu of Search Terms.**  In lieu of, or in addition to, identifying responsive ESI using the search terms and custodians/electronic systems as

described in Sections II.C & II.D above, a party may use a technology assisted review ("TAR") platform to identify potentially relevant documents and ESI. A Party who intends to use TAR will describe a TAR Protocol that will include: (a) the TAR system to be used; (b) the criteria to be used to identify the universe of documents to which TAR is to be applied (the "TAR Universe"); (c) its methodology for training the TAR model and identifying responsive documents; (d) the methodology for validation testing to be used; (e) the subject-matter expert who will oversee the implementation of the TAR Protocol; and (f) the process by which documents excluded as not conducive to categorization (e.g. multimedia files, primarily numerical spreadsheets, database files) will be reviewed for production.

If a party is using culling technology, criteria or methods, the producing party agrees to disclose details in advance to the receiving party along with the sources across which it plans to apply the culling techniques. The parties must also provide written information regarding the use of any other advanced culling techniques they employ in connection with their culling of the documents if they are using such technology to exclude documents from manual review. For the avoidance of any doubt, a producing party is at liberty to use any TAR methodology and use any tool for the purpose of prioritization and/or expediting the review.

F. **Date Range**. The appropriate date range for searching any sources of ESI is January 1, 2017, to the present.

G. **System Files**. Common system and program files as defined by the NIST library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced. The parties shall meet and confer on any additional file types that also need not be processed, reviewed, or produced.

H. **Threading.** The parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being

reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a Requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread.

### III.   IDENTIFICATION OF RESPONSIVE ESI.

A.   **General Document Production Format.**  The following provisions shall generally govern the production format and procedure for ESI other than databases or spreadsheets:

1.   **Format.**  All ESI, other than databases or spreadsheets, shall be produced in a single page 300 dpi, Group IV TIFF images, 1-bit depth, with an appropriate load file as agreed to by the parties. The documents shall also be processed through Optical Character Recognition (OCR) Software with OCR text files provided along with the production. Extracted Text shall be provided for all documents unless it cannot be obtained. To the extent a document is redacted, OCR text files for such document shall not contain text for the redacted portions of the document. Each TIFF image will be assigned a Bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire production padded to the same number of characters; (3) contains no special characters or embedded spaces; and (4) is sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. Each TIFF image file shall be named with the Bates Number corresponding to the number assigned to the document page contained in that image. In the event a party determines that it is unable to produce in the format specified in this section without incurring unreasonable expense, the parties shall meet and confer to agree upon an alternative format for production.

2.   **Metadata.**  The chart below describes the metadata fields to be produced, where reasonably available, in generic, commonly used terms which the producing party is to adapt

to the specific types of ESI it is producing, to the extent such metadata fields exist associated with the original electronic documents and are automatically generated as part of the electronic data discovery process. Any ambiguity about a metadata field should be discussed with the receiving party prior to processing the subject ESI for production. For emails with attachments, the Producing Party will indicate when a parent-child relationship between the message and the attachment exists. A Producing Party shall also produce a load file with each production with the following fields: Starting Bates; Ending Bates; Begin Attach; End Attach; and Source (custodian/location from which document was collected). If any metadata described in this section does not exist, is not reasonably accessible, is not reasonably available, or would be unduly burdensome to collect or provide, nothing in this ESI Order shall require any party to extract, capture, collect or produce extent that any of the following metadata fields.

| Field Name | Field Description |
| --- | --- |
| BegBates | First Bates number (production number) of an item |
| EndBates | Last Bates number (production number) of an item<br>**The EndBates field should be populated for single-page items. |
| AttachName | File name of the attachment, with any attachments separated by semi-colon. |
| BegAttach/Group ID | First Bates number of family group. |
| EndAttach | Last Bates number of attachment range (*i.e.*, Bates number of the last page of the last attachment) |
| PgCount | Number of pages in the item |
| Custodian | Name of person or source from whose/which files the item is produced |
| AllCustodian | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de- duplicated |

| Field Name | Field Description |
| --- | --- |
| FileSize | Size (in kilobytes) of the source native file |
| SourceFilePath[1] | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |
| HashValue | The MD5 or SHA-1 or IntMsgID hash value of the item. |
| NativeFileLink | Relative path for documents provided in native format only. **The linked file must be named per the BegBates value. |
| RecordType | Indicates item type (*e.g.*, email, edoc, attachment) |
| FileType | (*e.g.*, Outlook, Adobe Acrobat, MS Word, etc.) |
| FileExtension | Indicates file extension of the file e.g., .docx, .pptx |
| DateSent (mm/dd/yyyy) | Date email or calendar item was sent |
| TimeSent (hh:mmAM/PM) | Time email or calendar item was sent (Date and time fields may be combined) |
| DateReceived (mm/dd/yyyy) | Date email or calendar item was received |
| TimeReceived (hh:mmAM/PM) | Time email or calendar item was received (Date and time fields may be combined) |
| To | The names and/or SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and/or SMTP email address of the sender of the email or calendar item |
| CC | The names and/or SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | The names and/or SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| Number of Attachments | Number of attached, embedded or grouped items |

---

[1] This field may be excluded if the producing party determines it includes information protected by any applicable privilege or immunity.

| Field Name | Field Description |
|---|---|
| DateCreated (mm/dd/yyyy) | Date the item was created |
| TimeCreated (hh:mm AM/PM) | Time the item was created (Date and time fields may be combined) |
| ModifiedBy | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |
| LastModDate (mm/dd/yyyy) | Date the item was last modified |
| LastModTime (hh:mm AM/PM) | Time the item was last modified |
| Date Last Printed | Date the document was last printed. |
| FileName | The filename of the source native file for an ESI item |
| Title | Any value populated in the Title field of the source file metadata or item properties |
| Subject/E-Mail Subject | Any value populated in the Subject field of the source file metadata or document properties (*e.g.*, subject line of email or calendar item) |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties |
| TextPath | Full relative path to the location of the document-level text file. |
| Redacted | User-generated field that will indicate redactions. With the word "REDACTED". Otherwise, blank. |
| Redaction Reason | The reason for the redaction. If more than one reason, separate by semi-colons. |
| Confidentiality | User-generated field that will indicate confidentiality. With the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or "ATTORNEYS EYES ONLY" applicable. Otherwise, blank. |

3. **Appearance.** Each document's electronic image shall convey the same information and image as the original document except for redactions for any privilege or for the

7

confidential or identifying information of an Uphold customer other than the named Plaintiffs in this case. Documents shall appear with any revisions and/or comments visible and printed. Documents that present imaging or formatting problems shall be promptly identified and the parties shall meet and confer in an attempt to resolve the problems. In the event that a party determines in good faith that documents containing track changes, comments and/or other hidden content cannot be Tiffed or Bate stamped in a manner that preserves the document's original appearance, the parties shall meet and confer in good faith to resolve the issue.

4. **Unitization.** If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original file of the Producing Party or shall be documented in a load file or otherwise electronically tracked.

5. **Color.** Documents containing color need not be produced in color in the first instance. However, if good cause exists, the Requesting Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents requested to be produced in color format; and (2) an explanation of the need for production in color format. The Producing Party shall not unreasonably deny such requests if the Requesting Party has demonstrated good cause, but need not make such production until the parties reach agreement regarding apportionment of any additional costs associated with the production of documents in color.

6. **Redactions.** In the event that the producing party finds that redactions are needed to protect from disclosure documents and ESI subject to the attorney-client privilege, work product doctrine, or any other applicable privilege, legal requirement, or immunity, documents may be produced with redactions in TIFF format with corresponding redactions in the searchable OCR text and the associated metadata for the document, ensuring the redacted content is fully protected from disclosure. In the event that the producing party finds the redaction of certain

documents in image form to be overly burdensome, it may elect to redact such documents in their native form. Any metadata fields for redacted documents that would reveal privileged information shall be excluded. The Parties may redact (i) information that is privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; (ii) information subject to non-disclosure obligations imposed by governmental authorities, law or regulation (e.g., protected personal information or ESI protected by foreign data protection laws); (iii) personally identifiable information or (iv) sensitive, non-relevant information, including, but not limited to, trade secrets, or information regarding products, data, or people, within documents that contain relevant information.

      B.     **Production Format For Native Files.**  The following provisions shall generally govern the production format and procedure for native files:

      1.     Certain files types, such as presentation-application files (e.g., MS PowerPoint), spreadsheet-application files (e.g., MS Excel, .csv), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), shall be produced in native format. For files produced in native format, the producing party shall provide a single-page TIFF slip-sheet with the applicable Bates stamp indicating that a native item was produced. The corresponding load (.DAT) file shall include a NativeFileLink which provides the relative path linking information for each native file that is produced.  In addition, the confidentiality designation will be indicated in the name of the native file where reasonably feasible.  For documents that contain redacted text, the parties may either apply the redactions directly on the native file itself or produce TIFF image files with burned-in redactions in lieu of a Native File and TIFF placeholder image.

      2.     **Databases.**  If responding to a discovery request requires production of ESI contained in a database, the Producing Party at its option may provide the database as a Native File

pursuant to Section III.B.1 above or may comply with the discovery request by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic format (for example, in Excel or .csv format). The first line of each such file will, to the extent possible, show the column headers for each field of data included. The parties shall meet and confer as needed to finalize the appropriate data extraction and production format for specific information contained in particular databases.

        3.    **Requests for Other Native Files.** Other than as specifically set forth above, a Producing Party need not produce documents in native format. If good cause exists for the requesting party to request production of certain ESI in native format, the Requesting Party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The Producing Party shall not unreasonably deny such requests if the Requesting Party has demonstrated good cause for receiving the ESI in native format. Each file produced in response to such requests will be produced to the extent possible consistent with Section III.B.1 above.

        C.    **Production Media.** The Producing Party shall produce documents on CD-ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall be labeled with (1) the party making the production, (2) the date of the production, (3) text referencing that it was produced in Sandoval, et al., v. Uphold; (4) the Bates Number range of the materials contained on the Production Media; and (5) any confidentiality designation(s) consistent with the terms of the Protective Order entered in this matter. To maximize the security of information in transit, any Production Media may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption

key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

        D.    **Duplicate Production Not Required.**  ESI files need only be produced once.  The Producing Party will apply global deduplication to responsive ESI based on MD5 Hash values or an equivalent deduplication key.  Email will be deduplicated by family, not on an individual basis.  Additionally, to the extent reasonably accessible, all custodians of removed duplicates will be listed in an "All Custodians" field and identified by full name of the individual or departmental custodian.  Stand-alone documents may be deduplicated against email attachments provided that the email attachment is the duplicate that is produced and the custodian(s) of the removed duplicate(s) are entered into the All Custodian field. All natives, even deduplicated versions, will be retained in a format readily accessible to be produced upon request.

        E.    **Prior Productions/Productions From Other Proceedings.**  Notwithstanding anything to the contrary herein, production of documents made by a Producing Party in other civil investigations, litigations, and/or administrative actions by federal, state, or local government entities, if relevant to the Litigation may be made in the format in which they were previously produced, including any previously produced metadata, load files and accompanying text files, and same Bates numbers and confidentiality designations.  This paragraph addresses the format of production only and does not impose any obligation to produce documents produced in other proceedings.

        F.    **Privilege Logs.**  A party withholding documents based on one or more claims of privilege will produce a privilege log.  There will be no obligation to produce privilege logs identifying: (a) attorney-client communications concerning case strategy or the course of litigation that occur following the commencement of this lawsuit, including the efforts to locate and collect documents and ESI in response to a discovery request in this matter; and (b) work product created

by counsel, or by an agent of counsel other than a party, testifying expert, or third-party vendor, regarding this litigation and created after commencement of this litigation.

IV. **RULE 502(d) CLAWBACK AGREEMENT**

A. **No Waiver of Disclosure.** Section IV is agreed to pursuant to Fed. R. Evid. 502(d). Any Producing Party that discloses or produces a document or information that it thereafter claims to be privileged or otherwise protected from discovery ("Protected Information"), in whole or in part, shall not be deemed to have waived any applicable privilege or protection by reason of such disclosure or production in this or any other action.

B. **Notification Requirements.** A Producing Party must promptly notify all parties receiving the Protected Information ("Receiving Party") in writing that it has disclosed the Protected Information without intending to waive the privilege or protection. Upon receipt of such notification, each Receiving Party must within seven (7) days (1) return the Protected Information, including all copies, to the Producing Party, or (2) notify the Producing Party in writing that it has destroyed the Protected Information including all copies. Each Receiving Party must also cease any use and dissemination of the Protected Information until further order of the Court ruling that such information is not privileged or otherwise protected. Moreover, any party that receives any document or information during the course of discovery in this action that it knows or reasonably should know is likely to be subject to a claim of privilege or other protection from discovery shall so inform the Producing Party and all other parties in writing within seven (7) days of becoming aware of the potentially privileged document or information.

C. **Contesting Claim of Privilege of Work Product.** If a Receiving Party contests the claim of privilege or other protection made under Section IV.B above, the Receiving Party must within seven (7) days of receipt of the notice move the Court for an Order compelling disclosure. Any Protected Information disclosed or filed with the motion shall be filed under seal

with the Court. Pending a resolution of the motion, the Receiving Party shall not use or otherwise disseminate the Protected Information. The burden of proof for any such motion remains with the party asserting that the Protected Information is privileged or otherwise protected from disclosure.

   D. **Stipulated Time Periods.**  The parties may stipulate to extend the time periods set forth in Sections IV.B and IV.C above.

   E. **Effect.**  The provisions in Section IV of this ESI Order are intended to protect all parties to this action, to the fullest extent permissible by law, against any unintended waiver of the attorney-client privilege and/or the attorney work product doctrine that might otherwise arise from the disclosure of Protected Information. These provisions are intended to override any contrary law or presumptions, if and as applicable and permissible. The parties' execution of this ESI Order, and compliance with its terms, shall be understood, for all purposes within and outside this action, to constitute reasonable and prompt efforts to preserve privileges and protections from discovery in respect to any Protected Information.

V. **MISCELLANEOUS PROVISIONS**

   A. If the forms of production allowed by this protocol present an undue burden or cost for a Producing Party, the parties shall meet and confer to agree on a reasonable, alternative form of production. Any party may file a motion with the Court to seek individual relief from this ESI Order

   B. Each party will presumptively bear its own costs of production. However, the parties reserve the right to seek cost shifting as appropriate.

   C. Nothing in this ESI Order shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at the appropriate time.

    D.    The parties may agree to modify or waive the terms of this ESI Order in writing signed by counsel for the affected parties.

IT IS SO ORDERED.

Dated: __May 20, 2022___

*[Signature]*

Vernon S. Broderick
United States District Judge

For the avoidance of doubt, nothing in this Order relieves the parties of the obligation of complying with my Individual Rule 5.B in any instance that they may wish to file materials produced in discovery under seal.

Agreed to and submitted by:

GISKAN SOLOTAROFF & ANDERSON LLP

*/s/ Catherine E. Anderson*
Catherine E. Anderson
canderson@gslawny.com
90 Broad Street, 2nd Floor
New York, New York 10004
(212) 847-8315

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

*/s/ Rachel Geman*
Rachel Geman
rgeman@lchb.com
Christopher E. Coleman
ccolemand@lchb.com
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500

*Attorneys for Plaintiffs and the Proposed Class*


MEISTER SEELIG & FEIN LLP

*/s/ Benjamin D. Bianco*
Benjamin D. Bianco
bdb@msf-law.com
Caitlin R. Trow
crt@msf-law.com
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (646) 539-3791

*Attorneys for Defendant*